**SEYFARTH SHAW LLP**
William J. Dritsas (SBN 97523)
*wdritsas@seyfarth.com*
560 Mission Street, 31st Floor
San Francisco, CA  94105-2930
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

**SEYFARTH SHAW LLP**
Timothy M. Rusche (SBN 230036)
*trusche@seyfarth.com*
Timothy M. Fisher (SBN 272392)
*tfisher@seyfarth.com*
Amanda I. Fry (SBN 317093)
*afry@seyfarth.com*
601 S. Figueroa Street, Suite 3300
Los Angeles, California 90017
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendants
TESORO REFINING & MARKETING COMPANY LLC;
ANDEAVOR; ANDEAVOR LOGISTICS LP

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK L. MCGHEE, on behalf of himself and others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>TESORO REFINING & MARKETING COMPANY LLC; ANDEAVOR; ANDEAVOR LOGISTICS LP; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.   3:18-cv-5999<br><br>**TESORO REFINING & MARKETING COMPANY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with:<br>(1) Civil Cover Sheet<br>(2) Declaration of Karen Kawano<br>(3) Declaration of Timothy M. Rusche<br>(4) Corporate Disclosure Statement<br>(5) Certification of Interested Entities or<br>   Persons<br>(6) Proof of Service]<br><br>(Contra Costa Superior Court<br>   Case No. C18-01699)<br><br>Complaint Filed: August 17, 2018 |

# TABLE OF CONTENTS

Page

INTRODUCTION AND STATEMENT OF JURISDICTION ................................................................ 1

THE STATE COURT ACTION AND ALLEGATIONS ................................................................ 2

TIMELINESS OF REMOVAL ................................................................................................... 3

JOINDER ................................................................................................................................. 4

FEDERAL QUESTION JURISDICTION ................................................................................... 4

BASED ON THE LABOR MANAGEMENT RELATIONS ACT ................................................ 4

CLASS ACTION FAIRNESS ACT ("CAFA") JURISDICTION ............................................. 13

I.     THE REQUIREMENT FOR MINIMAL DIVERSITY FOR REMOVAL UNDER CAFA IS SATISFIED. ............................................................................................... 14

       A.     Plaintiff Is a Citizen of California ................................................................... 14

       B.     Tesoro Is Not a Citizen of California ............................................................... 14

II.    THE PUTATIVE CLASS EXCEEDS 100 .................................................................... 16

III.   THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 .................................... 16

SUPPLEMENTAL JURISDICTION .......................................................................................... 22

VENUE .................................................................................................................................. 22

INTRADISTRICT ASSIGNMENT ........................................................................................... 22

NOTICE OF REMOVAL ......................................................................................................... 22

PRAYER FOR REMOVAL ...................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrego v. The Dow Chemical Co.*,
  443 F.3d 676 (9th Cir. 2006) ..................................................................................................4, 15

*Allis Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ...........................................................................................................................4

*Audette v. International Longshoremen's and Warehousemen's Union*,
  195 F.3d 1107 (9th Cir. 1999) .........................................................................................................5

*Burgess v. Tesoro Refining & Marketing Co.*,
  C.D. Cal., Case No. 10-5870-DMG ........................................................................................10, 11

*Burnside v. Kiewit Pac. Corp.*,
  491 F.3d 1053 (9th Cir. 2007) ......................................................................................................1, 4

*Cicero v. DirecTV, Inc.*,
  2010 WL 2991486 (C.D. Cal. July 27, 2010) .............................................................................21

*Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*,
  491 U.S. 299, 311 (1989) ...........................................................................................................5, 12

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  135 S.Ct. 547 (2014) ........................................................................................................................17

*Davis v. HSBC Bank Nevada*, N.A.,
  557 F.3d 1026, 1032 (9th Cir. 2009) ...........................................................................................15

*Delagarza v. Tesoro Refining & Marketing Co.*,
  N.D. Cal., Case No. 09-05803 EMC........................................................................................10, 11

*Feao v. UFP Riverside, LLC*,
  2017 WL 2836207 (C.D. Cal. June 26, 2017) ...........................................................................19

*Fristoe v. Reynolds Metals Co.*,
  615 F.2d 1209 (9th Cir. 1980) .......................................................................................................16

*General Teamsters, Auto Truck Drivers and Helpers Local 162
  v. Mitchell Bros. Truck Lines*,
  682 F.2d 763 (9th Cir. 1982) .....................................................................................................5, 13

*Hertz Corp. v. Friend*,
  130 S. Ct. 1181 (2010).....................................................................................................................15

ii

49357353v.4

*Ho v. Ikon Office Solutions, Inc.*,
    143 F. Supp. 2d 1163 (N.D. Cal. 2001) ........................................................15

*Hyles v. Mensing*,
    849 F.2d 1213 (9th Cir. 1988) ....................................................................5

*Ibarra v. Manheim Inv., Inc.*,
    775 F. 3d 1193 (9th Cir. 2015) ..................................................................18

*Industrial Tectonics, Inc., v. Aero Alloy*,
    912 F.2d 1090 (9th Cir. 1990) ....................................................................15

*Jasso v. Money Mart Express, Inc.*,
    2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ...............................................21

*Johnson v. Columbia Properties Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006) ....................................................................14

*Jones v. Tween Brands, Inc.*,
    2014 WL 1607636 (C.D. Cal. Apr. 22, 2014) ...........................................19

*Jordan v. Nationstar Mortg. LLC*,
    781 F.3d 1178 (9th Cir. 2015) ..................................................................17

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) ....................................................................14

*Kantor v. Wellesley Galleries, Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) ..................................................................14

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986) ....................................................................14

*Lewis v. Verizon Communications, Inc.*,
    627 F.3d 395 (9th Cir. 2012) ....................................................................18

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ....................................................................................3

*Paige v. Henry J. Kaiser Co.*,
    826 F.2d 857 (9th Cir. 2001) ......................................................................5

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ..................................................................21

*Raphael v. Tesoro Refining & Marketing Co., LLC*,
    No. 2:15–cv–02862–ODW (Ex), 2015 WL 3970293 (C.D. Cal. June 30, 2015) ....................5, 10, 12

*Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*,
    369 U.S. 17 (1962) ......................................................................................5

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

*Rhoades v. Progressive Cas. Ins.*,
   410 Fed. Appx. 10 (9th Cir. Nov. 23, 2010) ........................................................................18

*Ritenour v. Carrington Mortg. Servs. LLC*,
   228 F. Supp. 3d 1025 (C.D. Cal. 2017) ..............................................................................19

*Strotek Corp. v. Air Transport Ass'n of Am.*,
   300 F.3d 1129 (9th Cir. 2002) ............................................................................................14

*Torrez v. Freedom Mortg., Corp.*,
   2017 WL 2713400 (C.D. Cal. June 22, 2017) ....................................................................19

*United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l*
   *Union, AFL-CIO, CLC v. Shell Oil Co.*,
   549 F.3d 1204 (9th Cir. 2008) .......................................................................................4, 10

*Valdez v Allstate Ins. Co.*,
   372 F.3d 1115 (9th Cir. 2004) ............................................................................................18

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................................................................21

*Young v. Anthony Fish Grottos, Inc.*,
   830 F.2d 993 (9th Cir. 1987) .....................................................................................1, 4, 5

**Federal Statutes**

28 U.S.C. § 84(b) ......................................................................................................................22

28 U.S.C. § 1331 .....................................................................................................................1, 4

28 U.S.C. § 1332 ...........................................................................................................1, 14, 16

28 U.S.C. §1332(a) ......................................................................................................................1

28 U.S.C. § 1332(d) ..........................................................................................................14, 17

28 U.S.C. § 1332(d)(2) ..................................................................................................2, 13, 14, 22

28 U.S.C. § 1332(d)(2)(A) .......................................................................................................14

28 U.S.C. § 1332(d)(5)(B) ..................................................................................................13, 16

28 U.S.C. § 1332(d)(6) ........................................................................................................13, 17

28 U.S.C. § 1332(d)(10) ...........................................................................................................14

28 U.S.C. § 1367 ..........................................................................................................................1

28 U.S.C. § 1367(a) ..................................................................................................................22

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

28 U.S.C. § 1441 ...........................................................................................1, 4, 13, 22

28 U.S.C. § 1441(a) ............................................................................................13, 22

28 U.S.C. § 1446 .......................................................................................................1

28 U.S.C. § 1446(a) ...............................................................................................3, 22

28 U.S.C. §§ 1446(b) ..................................................................................................3

28 U.S.C. § 1453(b) ....................................................................................................4

29 U.S.C. § 185 ..........................................................................................................1

29 U.S.C. § 185(a) ...................................................................................................1, 4

**State Statutes**

California Labor Code § 201 .........................................................................................2

California Labor Code § 202 .........................................................................................2

California Labor Code § 203 .........................................................................................2

California Labor Code § 226.7 ...........................................................................2, 18, 20

California Labor Code § 512 ...................................................................................2, 18

California Labor Code § 1194 .......................................................................................2

California Labor Code § 1197 .......................................................................................2

**Local Rules**

Civil Local Rule 3-2(d) ..............................................................................................22

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that Defendant Tesoro Refining & Marketing Company LLC ("Tesoro") hereby removes the above-captioned matter from the Superior Court of the State of California for the County of Contra Costa, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, on the basis of (1) original federal jurisdiction under the Labor Management Relations Act ("LMRA"), codified in relevant part at 29 U.S.C. § 185, (2) Diversity Jurisdiction, pursuant to 28 U.S.C. section 1332(a), and (3) supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In support of their request, Tesoro states as follows:

## INTRODUCTION AND STATEMENT OF JURISDICTION

1. This court has original jurisdiction over this action under the LMRA, which grants federal district courts subject matter jurisdiction over claims involving the interpretation of "contracts between an employer and a labor organization." 29 U.S.C. § 185(a). *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (if the claim requires the Court to *interpret* a CBA or is "substantially dependent on *analysis of a collective-bargaining agreement*," the claim is preempted, even if based on state law) (emphasis added). "The preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement. " *Young v. Anthony Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

2. As set forth below, the LMRA confers federal subject matter jurisdiction over this action because the resolution of Plaintiff's meal break claim requires interpretation of the on-duty meal period agreement negotiated between Plaintiff's union and Tesoro. The meal and rest beak claims (and all derivative claims) also require interpretation of multiple collective bargaining agreements that set forth Tesoro's policies authorizing and permitting meal and rest periods and relief, the scheduling and length of meal and rest periods, the nature and extent of employees' release from duty during meal and rest periods, and employees' rights to report violations and receive premium pay for any non-compliant meal or rest periods. Tesoro has also collectively bargained the terms and conditions of additional meal and rest period policies supplemental to the CBAs and a collectively bargained settlement of a prior class

1

action governing meal and rest period claims. Plaintiff's claims place the terms of these CBAs, letters of agreement, class settlement, and negotiated policies squarely at issue, including the applicability of various meal and rest period exemptions, and are, therefore, preempted by the LMRA.

3.      The LMRA similarly confers federal subject matter jurisdiction over this action because the resolution of Plaintiff's claim for unpaid wages based on supposed "controlled" on-call time requires interpretation of the collective bargaining agreements and the Company's past practices to determine what activities employees may engage in while on call.

4.      This Court also has original jurisdiction of this action under the Class Action Fairness Act ("CAFA,") codified in pertinent part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is properly removable pursuant to §§ 1446 and 1453 because it is a purported class action with an amount in controversy exceeding $5,000,000 (exclusive of interests and costs), at least one putative class member is a citizen of a state different from Tesoro, and Plaintiff alleges that there are over 100 putative class members.[1]

## THE STATE COURT ACTION AND ALLEGATIONS

5.      On August 17, 2018, plaintiff, Derek L. McGhee, filed a civil action in the Superior Court of the State of California, for the County of Contra Costa, entitled *Derek L. McGhee, on behalf of himself and others similarly situated, v. Tesoro Refining & Marketing Company, LLC; Andeavor; Andeavor Logistics LP; and DOES 1 through 100, inclusive,* Case No. C18-01699.

6.      Plaintiff alleges six causes of action on behalf of himself and other allegedly similarly situated employees: (1) Failure to pay wages for all time worked at minimum wage rate in violation of Labor Code sections 1194 and 1197; (2) Failure to authorize or permit meal periods in violation of Labor Code sections 512 and 226.7; (3) Failure to provide rest breaks in violation of Labor Code section 226.7; (4) Failure to provide complete and accurate wage statements in violation of Labor Code section 226; (5) Failure to timely pay wages due at time of separation of employment in violation of Labor Code

---

[1] This Court also has original jurisdiction of this action pursuant to diversity jurisdiction, as the Plaintiff's citizenship (California) is diverse from that of each Defendant (Delaware and Texas), and the amount in controversy as to Plaintiff's claims exceeds $75,000 exclusive of costs and interest.

49357353v.4

sections 201, 202, and 203; and (6) Unfair business practices in violation of Business and Professions Code section 17200, *et seq*.

   7.   Plaintiff divides this putative class into five subclasses (Complaint ¶ 39.):

- "**Minimum Wage Class**: All current and former non-exempt employees employed by Defendant [sic] in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class, who were under control of Defendants during time which Defendants did not pay wages for that time at the legal minimum wage rate."

- "**Meal Period Class:** All current and former non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked shifts more than five hours yet Defendants did not provide duty-free meal periods of not less than 30 minutes, discouraged from taking duty-free meal periods of not less than 30 minutes, and/or failed to pay meal period premium wages at the regular rate of pay.

- "**Rest Period Class:** All current and former non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked at least 3.5 hours or more hours in [sic] day who did not receive legally-required and/or legally compliant duty-free rest periods of ten net minutes rest time for every four hours worked between three and one-half and six hours, six and ten hours, or ten and fourteen hours."

- "**Wage Statement Class:** All current and former non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who received inaccurate or incomplete wage statements."

- "**Waiting Time Class:** All current and former non-exempt employees employed by Defendant [sic] in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who did not receive payment of all unpaid wages within the statutory time period."

## **TIMELINESS OF REMOVAL**

   8.   The Summons and Complaint, and all other materials served on Tesoro in this matter, and all documents on the docket in the state court action are attached as **Exhibit A**, and constitute all process, pleadings, and orders served to date in this action. 28 U.S.C. §§ 1446(a).

   9.   Tesoro and Andeavor Logistics LP each were served with the Summons and Complaint on August 29, 2018. Ex. A. Andeavor has not been served. Accordingly, this Notice of Removal is timely since Tesoro filed it less than one year from the date this action was commenced and within 30 days of service on it. 28 U.S.C. §§ 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-55 (1999) (30-day deadline to remove commences upon service of the summons and Complaint).

3

49357353v.4

**JOINDER**

10.     Pursuant to 28 U.S.C. § 1453(b), Tesoro need not obtain the consent of any other defendant to remove this action. *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 549 F.3d 1204, 1208-09 (9th Cir. 2008) (under CAFA, one defendant may remove entire case without joinder of other defendants); *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006) (any defendant may remove a class action without the consent or joinder of any other defendants). Nonetheless, all other named defendants join in the removal.

**FEDERAL QUESTION JURISDICTION**

**BASED ON THE LABOR MANAGEMENT RELATIONS ACT**

11.     This Court has original jurisdiction of this action under 28 U.S.C. section 1331, and Tesoro may remove the lawsuit pursuant to the provisions of 28 U.S.C. section 1441, as the relief sought is preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) ("LMRA").

12.     Section 301 of the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim [1] based on a collective bargaining agreement, and [2] any state claim whose outcome *depends on analysis of the terms of the agreement*." *Young*, 830 F.2d at 997 (citations omitted) (emphasis added). The Ninth Circuit has clarified that the LMRA preempts claims in two respects. **_First_**, if the claim involves a right that exists because of the CBA rather than state law, the "claim is preempted and [the court's] analysis ends there." *Burnside*, 491 F.3d 1059. **_Second_**, if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted, even if based on state law. (*Id.*)

13.     LMRA Section 301 is construed quite broadly to cover state-law actions that do not allege a breach of the CBA, but nonetheless require *interpretation* of labor agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("When resolution of a state law claim *is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract*, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.")

4

1  (internal citations omitted) (emphasis added); *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861

2  (9th Cir. 2001) (when resolution of a claim brought under state law is "substantially dependent on

3  analysis" of a collective-bargaining agreement, the claim is preempted by Section 301) (citing

4  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *Hyles v. Mensing*, 849 F.2d 1213, 1215-1216

5  (9th Cir. 1988); *Young*, 830 F.2d at 997, 999; *Raphael v. Tesoro Refining & Marketing Co., LLC*, No.

6  2:15–cv–02862–ODW (Ex), 2015 WL 3970293, *6–7 (C.D. Cal. June 30, 2015) ("To further the goal of

7  uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits

8  that allege the violation of a collective bargaining agreement . . . *[a] state law claim will be preempted if*

9  *it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require*

10  *judicial interpretation of those terms.*) (citing *Allis Chalmers Corp.* at 210–11) (emphasis added).

11      14.    Courts have consistently held that other collectively bargained agreements—such as side

12  agreements, benefit plans, and settlement agreements—also give rise to Section 301 preemption where a

13  plaintiff's claims require interpretation of those agreements. *See, e.g., Retail Clerks Intern. Ass'n, Local*

14  *Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) ("Contract in labor law is a

15  term the implications of which must be determined from the connection in which it appears . . . It is

16  enough that this is clearly an agreement between employers and labor organizations significant to the

17  maintenance of labor peace between them . . . It resolved a controversy arising out of, and importantly

18  and directly affecting, the employment relationship. Plainly it falls within § 301(a)."); *Audette v.*

19  *International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999) (accord)

20  (citing *Lingle v. Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988)); *General Teamsters, Auto Truck*

21  *Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines*, 682 F.2d 763, 765 (9th Cir. 1982)

22  (accord).

23      15.    Further, the collective-bargaining agreement may include implied terms based on the

24  parties' practice, usage, and custom. *Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*, 491 U.S.

25  299, 311 (1989).

26      16.    Here, Plaintiff's claims derive from the core allegations that Plaintiff and the putative

27  class members (1) were denied compliant meal periods because they had to work an extra 30 minutes at

28  the end of the workday if they took an off-duty break, (2) were not provided rest periods, pursuant to

*Augustus v. ABM Security Servs., Inc.*, 2 Cal. 5th 257 (2016), and (3) were not paid for "controlled" on-call time. Each of these claims require interpretation of a multitude of collectively bargained agreements and the parties' practices.

17.     ***Applicable United Steel Workers Collective Bargaining Agreements***. The terms and conditions of Plaintiff's and the putative class members' employment are governed by least eight CBAs between Tesoro and Plaintiff's collective bargaining representative, United Steel Workers (USW), applicable to different bargaining units at different locations for different periods of time covered by the putative class period. (Declaration of Karen Kawano In Support of Notice of Removal ("Kawano Decl.") ¶¶ 5-7, 10-11, 13-20, Exs. C-F, I-L.)[2]

18.     At Tesoro's Martinez (Golden Eagle) refinery, the following CBAs and further collectively bargained agreements apply to the putative class:

- USW Golden Eagle Refinery CBA, "Articles of Agreement Between Tesoro Refining Company Golden Eagle Refinery and United Steelworkers International Union Local 5 and United Steelworkers International Union, effective February 1, 2012 to January 31, 2015." (Kawano Decl. Ex. I)

- USW Golden Eagle Chemical CBA, "Articles of Agreement Between Tesoro Refining Company Golden Eagle Chemical Plant and United Steelworkers International Union 5, effective March 1, 2012 to February 29, 2015." (*Id.*, Ex. J.)

- USW Martinez Refinery CBA, "Articles of Agreement Between Tesoro Refining Company Martinez Refinery and United Steelworkers International Union Local 5 and United Steelworkers International Union, [effective] February 1, 2015." (*Id.*, Ex. K.)

- USW Martinez Chemical CBA, "Articles of Agreement Between Tesoro Refining Company Martinez Chemical Plant and United Steelworkers International Union 5, effective March 1, 2015." (*Id.*, Ex. L.)

- USW Golden Eagle Refinery On-Duty Meal Period Agreement. (*Id.*, Ex. B.)

At Tesoro's Southern California refineries in Wilmington and Carson, the following CBAs and additional side letters are applicable to the putative class:

- USW Carson CBA, "Articles of Agreement between BP West Coast LLC Carson Refinery and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C., effective February 1, 2012 to January 31, 2015." (*Id.*, Ex. D.)

---

[2] Tesoro and the International Brotherhood of Electrical Workers A.F.L. — C.I.O are subject to current and expired CBAs relevant to the lawsuit, including an agreement effective February 1, 2015 for Local Union Number 2295.

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

- USW Wilmington CBA, "Agreement Between Tesoro Refining and Marketing Company and United Steelworkers A.F.L. - C.I.O., CLC USW Local 675 Covering Employees of Los Angeles Refinery and Long Beach Terminal and Wilmington Sales Terminal," May 12, 2012 through April 30, 2015. (*Id.*, Ex. C.)

- USW Carson CBA, "Articles of Agreement Between Tesoro Refining & Marketing Tesoro Los Angeles Refinery Carson Bargaining Unit and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C. Effective Feb. 1, 2015." (*Id.*, Ex. E.) The parties to this CBA subsequently entered into a "Memorandum of Agreement, Modification to Article VIII, Meal Periods, Rest Periods and Meal Allowances," agreed to April 23, 2018. (*Id.*, Ex. T.)

- USW Wilmington CBA, "Agreement Between Tesoro Refining and Marketing and United Steelworkers A.F.L. — C.I.O., CLC, USW Local 675 Covering Employees of Los Angeles Refinery, Wilmington, " effective May 2, 2015. (*Id.*, Ex. F.)

- The Wilmington Refinery On-Duty Meal Period Agreement. (*Id.*, Ex. A.)

- The "Memorandum of Agreement Timekeeping, Meal and Rest Wilmington" agreement reached between Tesoro and USW Local 675 on April 7, 2016. (*Id.*, Ex. G.)

19.     ***Meal and Rest Period CBA Provisions***.[3] These CBAs and side letter agreements govern Plaintiff's and putative class members' wages, hours, and conditions of employment. Several of the CBAs and side letters also specifically address employees' entitlement to meal and rest periods, the manner in which the meal and rest periods are authorized and permitted, verification of meal and rest periods, the independent authority of employees to take duty-free rest periods, the authorization of on duty meal periods, provision of relief for rest periods, an employee procedure to identify any non-compliant meal and rest periods, and provisions for when and how much compensation will be paid for non-compliant meal and rest periods. They also provide that disputes pertaining to compliance with the meal and rest period provisions are subject to the mandatory grievance procedure.

20.     For example, the CBA between USW and Tesoro applicable to the Carson Bargaining Unit (effective Feb. 1, 2015) details Tesoro's policy for authorizing meal and rest breaks at Carson. Specifically:[4]

---

[3] The CBA's also have collectively bargained on-call provisions and practices that preempt Plaintiff's claim for unpaid wages based on supposed "controlled" on-call time. (Complaint ¶ 17; see, e.g., Kawano Decl. Ex. D, Article VII, A, 5). Because the CBAs do not clearly explain the activities an employee may engage in while on call, the Court must evaluate the current practices to determine when an employee is on call and the agreed upon activities employees may engage in while on call.

[4] The prior Carson CBA (effective Feb. 1, 2012 - Jan. 31, 2015) contained similar meal and rest period provisions. (Kawano Decl., Ex. D, pp. 61-64; 88-90.)

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

- Article VIII provides that "[t]he intent of this Article is to affect *more specific procedures* governing *meal periods and rest periods* for all Bargaining Unit employees represented by USW." (Kawano Decl., Ex. E, p. 61.)

- Article VIII.C provides:

  Employees *shall be permitted* to take one ten minute rest period for every four hours they work or major fraction thereof. A major fraction is defined as anything more than two hours for purpose of calculating rest periods. (Kawano Decl., Ex. E, p. 63.)

- The CBA provides extensive detail regarding the contours, purpose and provision of any on duty meal periods, including recognition that the "nature of the employee's work will occasionally prevent them from being relieved of all duty during certain meal periods when requested by a supervisor. On those occasions, the employees and the Union agree that employees will work a paid on-the-job meal period during such shifts." (Kawano Decl., Ex. E, Art. VIII.A, p. 62.)

- Appendix E confirms Tesoro's policy of authorizing and permitting meal and rest periods (and the Union waiver of the second meal period):

  "Employees are permitted a 10-minute paid rest period for each four hours of work or major fraction thereof. To the extent practicable, rest periods will be taken in the middle of the four-hour work period. Subject to the above, the timing of rest periods will be at the Company's reasonable discretion."

  "Employees who are required to remain on duty while they eat due to business needs shall receive any premium wage required by law but no less than one additional hour of pay at the hourly base rate, and shall be assigned another thirty (30) minutes during which to eat their meal not later than eight (8) hours from their regular starting time."

  "The Union, on behalf of all employees who work more than 10 but not more than 12 hours, waives the employees' right to take a second, unpaid, off-duty meal period. However, absent some business need to the contrary, employees will generally be permitted to take this second (30) minute meal period, which will be paid, on-duty at the worksite. The employee will remain responsible for his or her duties during this second thirty (30) minute meal period." (Kawano Decl., Ex. E, p. 133.)

- Article VIII.D provides a policy for payment of one hour of premium pay for any failure to follow the meal and rest period requirements:

  "There will be a maximum of *an additional one (1) hour of pay per day* for an employee for any combination of any failure to follow the requirements for an *Off-Duty Meal Period, On-Duty Meal Period or Rest Period*. Any payment of one (1) additional hour of pay for Meal Period or Rest Period violations shall not be counted as hours worked for purposes of calculating overtime." (Kawano Decl., Ex. E, p. 63.)

- Article XX provides detailed and comprehensive procedures for the settlement of disputes under the Agreement. (Kawano Decl., Ex. E, pp. 79-82.) (emphasis added).

  21.   ***Collectively-Bargained Meal and Rest Period Policies***. Tesoro and the USW further collectively bargained the terms and conditions of the meal and rest period policies at the refineries - policies directly at issue in this litigation.

8

49357353v.4

22.     For example, in 2014 Tesoro presented the USW Local 675 with a proposed Wilmington meal and rest period policy for review and comment. Negotiations and the Union's review of the policy continued through the spring of 2016. (Kawano Decl. ¶ 22.)

23.     In approximately April 2016, after obtaining Union's negotiated consent, Tesoro distributed the written meal and rest period policy for the Wilmington refinery. (*Id.* ¶ 23.) The policy states that it "supplements but is not intended to conflict with or supersede the Collective Bargaining Agreement between Tesoro and the United Steel Workers." (*Id.*, Ex. N.) The policy authorizes on duty meal periods, authorizes rest periods, prohibits anyone from discouraging employees from taking rest periods, requires employees to report when they were not permitted to take a full rest period or compliant meal period, and provides for premium payment for missed and non-compliant meal and rest periods. (*Id.*) The policy further provides that "The Company's policy is to provide meal and rest periods in accordance with the requirements of the California Labor Code and California's applicable Industrial Welfare Commission Wage Orders, except where the Company's policy is more generous." (*Id.*)

24.     Concurrently, Tesoro and the USW entered a "Memorandum of Agreement Timekeeping, Meal and Rest Wilmington" to expand the application of the prior agreements to additional positions (including operators in the *Bonner* putative class). This agreement was ratified by USW members and provides that the Union will bargain over changes if there is a change in controlling state law. (Kawano Decl. ¶ 15, Exs. G, H.) In connection with the policy's rollout, Tesoro developed an "FAQ" document and training slides to answer bargaining unit questions regarding the practical application of the meal and rest period policy, and provided the Union advanced copies for negotiation and feedback. (*Id.* ¶¶ 23-25, Exs. N, O, P.) The USW continued to discuss the practical operation of the meal and rest break policy following implementation. For example, at the December 20, 2016 meeting between Tesoro and the USW Local 675 (two days before the *Augustus* decision), the parties discussed rest breaks for Console Operators and other Operators, including as to the provision of relief (at issue in the Complaint allegations), and reporting and provision of penalty payments for any violation. (*Id.* ¶ 27, Ex. Q.) These discussions continued after the *Augustus* decision and through February 20, 2017, at which time Tesoro

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

and the Union signed off on the December 20, 2016 meeting minutes, confirming the "Breaks for Console Operators" was a "Closed" item. (*Id.* ¶ 27, 28, Ex. Q.)

25.     As other examples, in May 2018, Tesoro issued an updated meal and rest period policy at the Carson refinery, which reflected bargained changes to the meal and rest period provisions in the CBA and which has express provisions regarding meal and rest breaks. (*Id.* ¶ 30, Ex. S.)

26.     ***Collectively-Bargained Class Settlement Agreement***. Plaintiff's lawsuit implicates an on-duty meal period agreement entered between the USW and Tesoro to resolve prior class actions instigated by the USW, including meal and rest period claims.

27.     On March 15, 2013, the USW and Tesoro previously entered into a "Joint Stipulation of Class Action Settlement" ("Class Settlement") to resolve three class and putative class actions (*Delagarza v. Tesoro Refining & Marketing Co.,* N.D. Cal., Case No. 09-05803 EMC ["*Delagarza*"], *Burgess v. Tesoro Refining & Marketing Co.*, C.D. Cal., Case No. 10-5870-DMG (PLAx) ["*Burgess*"], and *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, and Richard Floyd and Eduardo Carbajal, on behalf of all similarly situated current and former employees v. Shell Oil Co., Tesoro Refining & Marketing Co.*, C.D. Cal., Case No. 08-3693 RGK ["*USW*"]. This Class Settlement is attached hereto as Exhibit U. (Ex. B, ¶¶ 1,7, 12, 25, 34, 43.)

28.     The *USW* putative class action was filed on April 25, 2008, alleging (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to furnish timely and accurate wage statements; (4) failure to provide wages due at the time of termination; and (5) violation of California's Unfair Competition Law. (Ex. B, ¶ 26.) After class certification was denied, various members of the *USW* putative class, represented by the same counsel, filed *Delagarza* and *Burgess*, in which the plaintiffs alleged claims for (1) failure to provide meal periods; (2) failure to pay all wages due at termination; and (3) violation of California's UCL. (Ex. U, ¶ 27.)

29.     The Class Settlement resolved the *USW, Delagarza* and *Burgess* actions, "including without limitation:

> claims based upon Tesoro's alleged *failure to provide an off-duty meal period; failure to provide on-duty meal period; failure to authorize or permit a rest period*; failure to furnish timely and accurate wage statements due to the *failure to provide an off-duty meal period; failure to provide on-duty meal period; failure to authorize and permit a rest period*; and failure to pay wages due upon termination arising from the *failure to provide an off-duty meal period; failure to provide*

10

*on-duty meal period; failure to authorize and permit a rest period*; and claims derivative of those alleged in the complaints filed in *USW, Delagarza,* or the First Amended Complaint filed in *Burgess* arising under the California Labor Code (including Sections 201, 202, 203, 204, 210, 215, 216, 218, 218.5, 221, 222, 223, 224, 226, 226.6, 226.7, 512, 558, and 1199); California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200 *et seq.*; California Industrial Welfare Commission Wage Order 1-2001 sections 7, 11, and 12, codified at 8 Cal. Code Reg. § 2698 *et seq.* ("PAGA").

(Ex. U, ¶ 43) (emphasis added).

30.     USW's consent to the Class Settlement was the product of a collectively-bargained negotiation. The Class Settlement provided that "USW and Tesoro have engaged in collective bargaining, and, as a condition of this Agreement, have agreed (or will agree) to certain terms and conditions of employment regarding Covered Employee's meal periods. Copies of such agreements are attached hereto as Exhibit A and are hereby made part of this Agreement." (Ex. U, ¶ 38.)

31.     The Class Settlement further provided for a ratification by each local USW membership and stated that absent such ratification, Tesoro could void the agreement. (Ex. U, ¶ 40.)

32.     The Class Settlement included a negotiated on-duty meal period agreement that was intended to address wage and hour compliance in view of the work demands of the various refinery operations. (Ex. U, p. 46 of 97.)

33.     The on-duty meal period agreements also provided: "If a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement unnecessary, illegal, or ineffective, then the Union and the Company shall promptly meet to bargain over the terms of a new agreement covering provision of meal periods." (Ex. U, p. 47 of 97.) This collectively bargained class settlement was reviewed and approved by the court.

34.     The on-duty meal period agreements were ratified. (Kawano Decl., Exs. A, B.)

35.     ***Applicable Teamsters Collective Bargaining Agreement.*** Additionally, the putative class includes Transport Drivers in Tesoro's Transport Operations for Los Angeles, Orange, and San Bernardino Counties who are represented by the Teamsters Union. Tesoro and the Teamsters are parties to a CBA titled "Labor Agreement Between Tesoro Refining and Marketing and General Teamsters, Airline, Aerospace and Allied Employees, Warehousemen, Drivers, Construction, Rock and Sand, Local

986, March 1, 2017 - February 28, 2023." ("Teamsters CBA"). (*Id.*, Ex. S). This CBA contains negotiated meal and rest period provisions.[5]

36.     ***Preemption***. Plaintiff's claims are preempted by the LMRA in at least three broad respects. *First,* they require interpretation of a number of collective bargaining agreements (CBAs) and side letter agreements addressing the terms and conditions of Tesoro's authorization of meal and rest breaks. These agreements set forth Tesoro's policies authorizing and permitting meal and rest periods and relief, the scheduling and length of meal and rest periods, the nature and extent of employees' release from duty during meal and rest periods, the requirements for on duty meal periods, and employees' rights to report violations and receive premium pay for any non-compliant rest and meal periods. Tesoro has also collectively bargained the terms and conditions of additional meal and rest policies supplemental to the CBAs directly relevant to Plaintiff's claims of unlawful failure to authorize and permit duty free rest periods and alleged unlawful authorization of on-duty meal periods. Plaintiff's claims place the terms of these CBAs, letters of agreement, and negotiated policies squarely at issue, will require interpretation of those agreements for both class certification and liability determinations, and are, therefore, preempted by the LMRA. As part of this determination, the Plaintiff's claims require the interpretation of implied CBA terms based on the parties' practice, usage, and custom, particularly as to the on-call and rest period claim. *Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*, 491 U.S. 299, 311 (1989).

37.     *Second*, Plaintiff's putative class encompasses maintenance workers and, as a result, the meal period claim brought on their behalf is preempted because there are a "plethora of provisions in need of interpretation throughout the [] CBAs" that require interpretation to determine if the meal period exemption found in Labor Code Section 512(e) applies. *Raphael v. Tesoro*, 2015 WL 3970293, at *6-7 (C.D. Cal. Jun. 2015) (finding meal period claims filed against Tesoro to be preempted by LMRA § 301). Similarly, the meal and rest break claims of Tesoro transport drivers that fall within the putative class are preempted because the Teamsters CBA (Kawano Decl., Ex..S). has meal and rest break

---

[5] Tesoro and the Teamsters also were parties to a prior CBA, effective from March 1, 2014-February 28, 2017, which had similar negotiated meal and rest period provisions.

1  provisions that require interpretation to determine if the exemption found in Labor Code Section 512(e)

2  applies.

3       38.  *Third*, Plaintiff seeks a Court determination regarding Tesoro's meal and rest period

4  policies and practices, rather than a collectively-bargained modification of any allegedly non-compliant

5  policy or practice. This not only requires an interpretation of the collectively-bargained Class Settlement

6  described above, but also violates and interferes with the terms of the Class Settlement. As described

7  above, the USW previously entered a collectively-bargained class settlement addressing the issue of the

8  nature of the plant operations, the nature of the work, health and safety and environmental concerns,

9  radio usage and wage and hour compliance, including the provision of on-duty meal periods.

10  Specifically, the class settlement negotiated with USW included a release of meal and rest break claims

11  and further addressed the nature of the work, recall to work assignment, and general radio use within

12  Tesoro's refinery by providing for on-duty meal period agreements and meal period waivers. The

13  agreement further provided that "any changes in law that rendered the Agreement unnecessary, illegal or

14  ineffective" required the Union and the Company to promptly meet to bargain over the terms of a new

15  agreement to address any purported violation. Rather than do so, Plaintiff now seeks to have the Court

16  evaluate the on-duty meal period agreements and purported failure to authorize rest break practices in

17  violation of the parties' prior collectively-bargained class action settlement agreement. *See General*

18  *Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines*, 682 F.2d 763, 765

19  (9th Cir. 1982) (rejecting plaintiff's argument that under the LMRA, the word "contracts" was limited to

20  CBAs, and holding that a settlement agreement was a contract for LMRA purposes).

21       39.  Accordingly, Plaintiff's state law claims are "preempted" by Section 301 of the LMRA,

22  and this matter is properly removable to this Court pursuant to 28 U.S.C. section 1441.

23       **CLASS ACTION FAIRNESS ACT ("CAFA") JURISDICTION**

24       40.  This action is properly removable, under 28 U.S.C. § 1441(a), as this Court has original

25  jurisdiction over the action under CAFA. 28 U.S.C. §§ 1332(d)(2) & (d)(6); 28 U.S.C. § 1332(d)(5)(B).

26  CAFA removal requires (a) a class size of at least 100 members, (b) at least one plaintiff and one

27  defendant that are citizens of different states, and (c) an aggregate amount in controversy exceeding $5

28  million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Each requirement is met here.

# I.     THE REQUIREMENT FOR MINIMAL DIVERSITY FOR REMOVAL UNDER CAFA IS SATISFIED.

41.     CAFA requires that "any member of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

## A.     Plaintiff Is a Citizen of California

42.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place, and [intends] to remain there permanently and/or indefinitely." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

43.     Plaintiff alleges that he is domiciled in the State of California. (Complaint ¶ 3.) Therefore, Plaintiff was at the time this action commenced, and still is, a citizen and resident of the State of California. Additionally, a public records search for Plaintiff's current address indicates that he continues to reside in California. (Rusche Decl. ¶ X.) Therefore, Plaintiff was at the time this action commenced, and still is, a citizen of the State of California.

## B.     Tesoro Is Not a Citizen of California

44.     Tesoro is a citizen of a State other than California within the meaning of 28 U.S.C. Section 1332(d). Tesoro is now, and was at the time this action commenced, a limited liability company formed under the laws of the State of Delaware, with its principal place of business in San Antonio, Texas. (Kawano Decl. ¶¶35-39.)[6]

45.     Limited liability companies are unincorporated associations for diversity purposes under 28 U.S.C. § 1332. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see*

---

[6] Although CAFA removal only requires one diverse defendant, *see* 28 U.S.C. 1332(d)(2) ("The district courts shall have original jurisdiction of…a class action in which…any member of a class of plaintiffs is a citizen of a State different from ***any*** defendant") (emphasis added), neither Andeavor nor Andeavor Logistics LP is a citizen of California. (Kawano Decl. ¶ 39.)

*Davis v. HSBC Bank Nevada*, N.A., 557 F.3d 1026, 1032, n.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes . . . .").

46.    Thus, to determine jurisdiction under CAFA, limited liability companies, such as Tesoro, are treated the same as corporations in determining their principal places of business. *See e.g., Abrego v. Dow Chem. Co*., 443 F. 3d 676, 684 (9th Cir. 2006) (stating that CAFA "departs from the rule that frequently destroys diversity jurisdiction, that a limited partnership's or unincorporated association's citizenship can be determined only by reference to all of the entity's members.") (citations and internal quotations omitted). To determine a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id*. Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *Id.; see also Ho v. Ikon Office Solutions, Inc*., 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters was located, where the corporate officers worked, and from where corporate policies and procedures arose). Thus, the "nerve center" is where "its executive and administrative functions are performed." *Industrial Tectonics, Inc., v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990)).

47.    Here Tesoro is a limited liability company organized under the laws of Delaware, with its principal place of business located in San Antonio, Texas. Tesoro's principal place of business is Texas because its "nerve center" is located in San Antonio, Texas. This is where Tesoro's headquarters are located and where the senior leadership directs, controls, and coordinates all corporate planning and strategies, and is where the majority of its executive and administrative functions take place. (Kawano Decl. ¶¶ 36-39.) This includes final decision-making and oversight of the following operations and divisions: financial; legal; capital and special projects; business development; environmental, health and safety; technology; arbitrage trading; facility maintenance; pipelines, terminal, trucking, and retail; product supply and trading; business development and logistics; marketing; marine; and refining. (*Id*.)

15

Tesoro's policies and procedures in connection with these operations and divisions are primarily formulated in Texas. (*Id.* at 36.) Tesoro's executive officers are primarily based in Texas, including its Chairman of the Board of Directors, President and Chief Executive Officer; Executive Vice President, Chief Financial Officer and President; Executive Vice President, Operations; Executive Vice President, General Counsel and Secretary; its Senior Management Team, including Tesoro's Vice President, Treasurer and Credit; Vice President, Supply Chain Management, and Vice President, Controller. (*Id.* at ¶ 37.) Tesoro's financial records are maintained in Texas. (*Id.* at 38.) Therefore, Tesoro is a citizen of the State of Texas pursuant to the "nerve center" test, and a citizen of the State of Delaware pursuant to its organization.

48.     **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants 1 through 100, do not deprive this Court of jurisdiction.

49.     Accordingly, CAFA diversity is satisfied because at least one plaintiff is diverse from at least one defendant.

## II.     THE PUTATIVE CLASS EXCEEDS 100.

50.     CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

51.     Taking just one subset of job positions from Plaintiff's putative class—namely non-exempt "Operator" positions in California—Tesoro employed approximately 1,017 such Operators during the period of August 17, 2014 to March 2018.[7]   (Kawano Decl. ¶ 33.)

## III.     THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

52.     While Tesoro specifically denies liability as to all of Plaintiff's claims, and specifically denies the appropriateness of the case proceeding as a class action, Tesoro has a reasonable, good faith

---

[7] For purposes of establishing the amount in controversy, below, Defendant has used data covering August 17, 2014 to March 2018. Thus, the figure of 1,017 actually undercounts the number of Operators, because it does not include Tesoro's Operators whose employment commenced between March 2018 and the present.

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

belief that the amount in controversy, as alleged and pled by Plaintiff, exceeds $5,000,000. All calculations in support of the amount in controversy analysis are based on the allegations in Plaintiff's complaint and are not intended as an admission that any of those allegations have merit.

53.    In calculating the amount in controversy under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

54.    In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . . Overall, section 1332(d) was intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"). "[T]he Supreme Court left no doubt 'that no anti-removal presumption attends cases involving CAFA.'" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014)). This "declaration is bolstered by the Court's reference to Congress's 'overall intent ... to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'" *Jordan* 781 F.3d at 1183-84 (quoting S.Rep. No. 109-14, at 35, 2005 U.S.C.C.A.N. 3, 34); *see also Dart Cherokee*, 135 S.Ct. at 551 (quoting S.Rep. No. 109-14, p. 43 (2005) ("CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

55.    As the Supreme Court recently made clear, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*

*Cherokee*, 135 S. Ct. at 553-54 ("[W]hen a defendant seeks federal court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *Ibarra v. Manheim Inv., Inc.*, 775 F. 3d 1193, 1199 (9th Cir. 2015) (The defendant may use assumptions reasonably grounded in direct or circumstantial evidence and in plaintiff's allegations). A "damages assessment may require a chain of reasoning that includes assumptions," as long as the assumptions have "some reasonable ground underlying them." *Ibarr*a, 775 F.3d 1193 at 1199; *see also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2012) (reversing remand order because, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to prove exposure); *accord Rhoades v. Progressive Cas. Ins.*, 410 Fed. Appx. 10 (9th Cir. Nov. 23, 2010) (wage and hour case citing Lewis and holding "[o]nce [defendant] has explained plausibly how the stakes exceed $5 million," removal is proper "unless it is legally impossible for the plaintiff to recover that much"); *Valdez v Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

56.      **Meal Period Recovery**: Plaintiff seeks recovery on behalf of himself and putative class members for alleged failure to provide meal periods. (Complaint, ¶¶ 22-26, 39.) Labor Code section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes…." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes…." Labor Code section 226.7 requires employers to pay an extra hour's pay to employees who are not provided a meal period.

57.      Plaintiff alleges a class wide "policy, practice, and/or procedure of discouraging Plaintiff and hourly non-exempt employees from taking duty-free meal periods and outside of Defendants' work premises." (Complaint, ¶ 25.) According to Plaintiff, this class wide policy, practice, and/or procedure results in daily meal period violations because "[i]f the employee is not free to leave the work premises or worksite during the meal period, even if the employee is relieved of all other duty during the meal

period, the employee still is subject to the employer's control and the meal period is counted as time worked." (Complaint, ¶ 23.)

58.     Based on Plaintiffs' allegations, and taking just one subset of job positions from Plaintiff's putative meal period class—the approximately 1,017 Operators, who constitute only some of the putative class members working at Tesoro's refineries (not to mention workers not at the refineries)—the amount in controversy for Plaintiff's meal period claim alone is **more than $24,554,505** for the period of August 17, 2014[8] to March 2018, which is shorter than the alleged class period.[9] (623,676 Operator shifts X about $40.43 per hour [The exposure calculation is based on each Operators' actual hourly rate per each shift worked, not the static $40.43]). (See Kawano Decl. ¶ 33.)

59.     The assumption of one meal premium per shift of five hours or more is reasonable where Plaintiff has alleged a "policy, practice, and/or procedure" resulting in meal period violations. Numerous district courts have concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See, e.g., Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL

---

[8] Each of Plaintiff's alleged classes extends back to "four years prior to the filing of the initial Complaint in this action." (Complaint, ¶ 39.) This appears to be based on Plaintiff's sixth cause of action for "Unfair Competition" under Business & Professions Code section 17200, which carries a four year limitation period. Thus, Defendants' calculations are based on the period beginning August 17, 2014, four years prior to the filing of the Complaint.

[9] As mentioned above, Defendant has used data covering August 17, 2014 to March 2018. Thus, the amount in controversy for the meal period claim as to Operators alone is actually greater than $24,554,505, because the amount in controversy also includes shifts from March 2018 to present.

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

1   1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties

2   since the complaint did not limit the number or frequency of violations).

3       60.    **Wage Recovery for Unpaid Work Time.** Plaintiff alleges no fewer than four

4   "companywide policies, practices, and/or procedures" that allegedly "resulted in time during which

5   Plaintiff and other hourly non-exempt employees were subject to the control of Defendants but were not

6   paid wages for that time." (Complaint, ¶ 18.) These theories are "turnover time," when employees from

7   an outgoing shift met with employees from the incoming shift to pass on information or instruction, but

8   outgoing employees were allegedly not paid for this time (Complaint, ¶ 14); an alleged time-rounding

9   policy that benefited Defendants (Complaint, ¶ 15); alleged unpaid time spent donning and doffing

10   personal protective equipment (Complaint, ¶ 16); and alleged uncompensated on-call time when

11   employees were so restricted that they were prevented from engaging in personal activities (Complaint,

12   ¶ 17).

13       61.    Considering only Operator positions, and assuming that Plaintiff's four theories of unpaid

14   compensable time resulted in only 1/10 of an hour of unpaid time per shift, the resulting value of such

15   unpaid time would calculate to approximately **$2,455,450** for the under-inclusive period of August 17,

16   2014 to March 2018 (623,676 X  about $40.43 per hour X. 10 X [The exposure is based on each

17   Operators' actual hourly rate per each shift worked, not the static $40.43]).  (See Kawano Decl. ¶ 33.)

18       62.    **Rest Period Recovery for Lab Technicians.** Plaintiff also seeks recovery on behalf of

19   himself and a putative sub-class of all current and former hourly non-exempt lab technicians in

20   California for alleged failure to provide rest periods. (Complaint, ¶¶ 31-32, 39.) As with meal period

21   violations, Labor Code section 226.7 requires employers to pay an extra hour's pay to employees who

22   are not provided a rest period. Employees may recover a maximum of one missed rest period premium

23   per day, regardless of how many rest periods are missed in that day. *United Parcel Service v. Superior*

24   *Court*, 192 Cal. App. 4th 1043 (2011). Plaintiff alleges, *inter alia*, that "Defendants did not authorize or

25   permit its [sic] Plaintiff and similarly situated lab technicians to take legally-compliant rest breaks

26   because Defendants maintained a policy, practice, and/or procedure whereby they required Plaintiff and

27   similarly situated lab technicians to remain onsite during their rest breaks, thereby retaining control over

28   Plaintiff and similarly situated lab technicians." (Complaint, ¶ 31.)

63.     From August 17, 2014 to present, Tesoro employed at least 48 hourly non-exempt lab employees in California. These employees had an average hourly rate of pay of approximately $41.58 and were employed for approximately 32,528 shifts during this period. (Kawano Decl. ¶ 34.) Accordingly, based on Plaintiff's allegation that lab technicians did not receive compliant rest breaks each shift because they were required to remain on the facility, the amount in controversy for the rest break claim is approximately $1,352,514.

64.     Thus, only taking into account Plaintiff's meal period claim, claim for unpaid wages, and rest period claim, the amount in controversy exceeds **$28,362,469**. ($24,554,505 + $2,455,450 + $1,352,514.)[10]

65.     **Attorneys' Fees.** Plaintiff is seeking attorneys' fees, which are properly included in the amount in controversy for purposes of CAFA. *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465 at *6 (N.D. Cal. Mar. 1, 2012) ("Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction.") (citing *Guglielmino v. McKee Foods Corp.*, 696 F.3d 696, 700 (9th Cir. 2007)). In the class action context, courts have found that 25% of the recovery is a benchmark for an attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 at * 27-28 (N.D. Cal. Apr. 1, 2011) (ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486 at *6 (C.D. Cal. July 27, 2010) (attorneys' fees in the amount of 30% of the total gross settlement amount reasonable). Even under the conservative benchmark of 25% of the total recovery on Plaintiff's meal period, rest period, and unpaid wages claims, attorneys' fees alone would be approximately **$7,090,617.25** in this case.

---

[10] Because CAFA's amount in controversy requirement is easily met here, Tesoro does not include in this total Plaintiff's claims for non-compliant wage statements and failure to pay final wages at time of termination. However, Tesoro estimates that the amount in controversy for these claims is approximately $5,300,000 and $2,300,000, respectively.

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4

66.     Based on Plaintiff's allegations, the total amount in controversy exceeds **$35,453,086**, including attorneys' fees. ($28,362,469 + $7,090,617.25.) This amount far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

67.     Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

## SUPPLEMENTAL JURISDICTION

68.     All six causes of action alleged by Plaintiff depend upon and require interpretation of the collective bargaining agreements, side letter agreements, and collectively bargained policies, and thus arise under Section 301. To the extent, however, that there are remaining claims for relief that are not completely preempted by Section 301, these claims are within the supplemental jurisdiction of this Court under 28 U.S.C. section 1367(a) (and removable under CAFA), in that they are so related to the Section 301 claims that they form part of the same case or controversy under Article III of the United States Constitution. In the alternative, any such other claims for relief are separate and independent claims which are properly removable to this Court pursuant to 28 U.S.C. section 1441(c). Thus, this action is removable in its entirety.

## VENUE

69.     Venue lies in the Northern District of California pursuant to 28 U.S.C. sections 84(b), 1441 and 1446(a) because this action is being removed from the Superior Court of the State of California for the County of Contra Costa.

## INTRADISTRICT ASSIGNMENT

70.     Pursuant to Civil Local Rule 3-2(d), this action should presently be assigned to the San Francisco Division or the Oakland Division because Plaintiff filed suit in the County of Contra Costa. (Ex. A, Complaint.)

## NOTICE OF REMOVAL

71.     This Notice of Removal will be promptly served on Plaintiff and his counsel, as well as filed with the Clerk of the Superior Court of the State of California for the County of Contra Costa.

1

**PRAYER FOR REMOVAL**

2          WHEREFORE, Tesoro prays that this civil action be removed from the Superior Court of the

3    State of California, Contra Costa to the United States District Court for the Northern District of

4    California.

5

6    DATED: September 28, 2018                          Respectfully submitted,

7                                                       SEYFARTH SHAW LLP

8

9                                                       By:  /s/ Timothy M. Rusche
                                                            William J. Dritsas
10                                                          Timothy M. Rusche
                                                            Timothy M. Fisher
11                                                     Attorneys For Defendants
                                                       TESORO REFINING & MARKETING
12                                                     COMPANY, LLC; ANDEAVOR; ANDEAVOR
                                                       LOGISTICS LP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TESORO'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

49357353v.4