# Anwar Burton

| | |
|---|---|
| **From:** | Kopp, Michael W <MKopp@seyfarth.com> |
| **Sent:** | Friday, March 6, 2020 4:47 PM |
| **To:** | Anwar Burton; Vincent Granberry; Joseph Lavi |
| **Cc:** | Rusche, Tim; Manesis, Mary; Ninelist, Linda |
| **Subject:** | RE: McGhee vs. Tesoro |

Anwar,

We respond in more detail below to each of your points, but up front raise the following three main points.

*First,* we have already produced a substantial sampling of wage and time records. In a further spirit of compromise, we are willing to evaluate some expansion of that sample - but first we do need a ***specific*** (non-boilerplate) explanation as to (1) how plaintiff is entitled to statewide discovery beyond the refinery and unit at which he worked, and (2) how this data has any bearing on your claims. Plaintiffs' testimony conclusively establishes he has no basis/knowledge of any violation outside of his unit at Carson, as we have detailed in numerous prior meet and confer correspondence as well as our prior briefing submitted to the court. And despite being in possession of the CBAs for roughly a year now, you have not ever identified any policies/provisions that are unlawful for any unit/facility outside of the Carson Lab, or any basis for demanding documents and discovery from facilities/units at which Plaintiff never worked.
And we have yet to receive a credible explanation as to how this requested data is probative of/relevant to your theories of liability. You have had a sample data set for weeks now, and should be able to concretely articulate how those records are relevant to your claims. From our review (and as set out in more detail below), the only claim where it might have relevance is rounding. First, as we have already explained, the CBAs only provide for rounding in the employees' favor. Second, you already have a full data set for plaintiff and for the Carson lab. At a minimum, we ask that you identify where the data we have already produced shows some rounding problem (e.g. that Plaintiff even has standing) - before we discuss producing any more of these sensitive, private payroll records for employees across the state.

*Second*, if there is some legitimate basis for expanding the sampling that has already been produced (e.g. your response to the first point above), please send us a sampling proposal that we can consider.

*Third*, as to the interrogatories you identify below, those were the subject of their prior motion, and the court did not grant your motion as to the interrogatories. They are subject to all of the same objections in terms of exceeding the limits, overbreadth, and undue burden. In any event, those interrogatories are data requests that are redundant. Between the 30(b)6 and the sampling already produced (or that we might be expanded in a further compromise), you would be able to obtain the types of information that are sought. Nonetheless, in a further spirit of compromise, we are willing to supplement certain responses identified below.

As noted, further responses are interlineated below. If you have any issues/questions with our response and proposal, please let us know a time to discuss.


Counsel,

Per Judge Illman's January 28, 2020, Order, I want to revisit the issue of class-wide discovery now that the Court has ruled on Defendant's Motion to Dismiss, which was denied on all grounds except Plaintiff's claim for injunctive relief and waiting time penalties based on California Labor Code Section 202.

As a reminder, Plaintiff's outstanding consists of the following:

1

- **Requests for Documents**:
    - Request No. 3 asks Defendant to produce all punch in and punch out data for putative class members with all private information redacted.

Can you please explain why this data is required? You have four wage claims (1) donning and doffing; (2) shift relief; (3) unpaid standby time; and (4). rounding. The first two are off-the-clock claims. By their very nature, punch records have no relevancy. Similarly, unpaid standby time is not tracked with punch records. As for the rounding claim, we already provided all Carson laboratory punch records. As we have expressed, rounding is always in favor of the employee (and as also set forth in all of the CBAs). Producing all punch records would be an immense project that would take in excess of 20 attorney hours, not to mention at least that much in the Tesoro team. If you have reviewed the laboratory records and found something different (or reviewed Plaintiff's records), please let us know and perhaps we would consider producing a records sample. Otherwise, this appears to be an expense, burdensome exercise that will not advance your case.

Regarding meal period punches, your claim predicated upon the allegation that employees were compelled to remain on the facility because they had to work an extra 30 minutes if they wanted to receive pay for a 12-hour shift (rather than pay for 11. 5 hours). This policy only applied to operators at Carson. Further, can you please articulate how these records would support that claim? If you would please explain the relevancy, we would consider producing a sample of Carson operator time records.

Time records have no bearing on the remaining claims.

- Request No. 5 asks Defendant to produce all wage statements for putative class members during the relevant time period with private information redacted.

Can you please explain why you require all wage statements? As stated above, you have four wage claims (1) donning and doffing; (2) shift relief; (3) unpaid standby time; and (4). rounding. The first two are off-the-clock claims. By their very nature, wage statements have no relevancy (i.e., the time is unpaid) Similarly, unpaid standby time and rounded time is not tracked on wage statements (not to mention there is no rounding in the employer's favor). Producing all wage statements would be an immense project that would take in excess of 40 attorney hours to produce (even if we spent just a couple of minutes per employee), plus the Tesoro team's time

Regarding meal period punches, your claim predicated upon the allegation that employees were compelled to remain on the facility because they had to work an extra 30 minutes if they wanted to receive pay for a 12-hour shift (rather than pay for 11. 5 hours). This policy only applied to operators at Carson. Further, can you please articulate how these records would support that claim? If you would please explain the relevancy, we would consider producing a sample of Carson wage statements.

Wage statements have no bearing on the remaining claims.

- Request Nos. 6, 7, 8, and 16 ask Defendant to produce policies, procedures, and practices applicable to putative class members related to the claims at issue in the Complaint as well as putative class members' work schedules during the relevant time period.

We will produce Carson meal period policies applicable to operators (the only employees subject to the practice of which you complain). We have already produced all CBAs that contain policies on your (1) shift relief; (2) unpaid standby time; and (3) rounding. We will search for any policies discussing donning and doffing.

As for work schedules, this too would be an immense project taking countless hours to gather and produce. Can you please articulate to which claim this applies and why they would assist your claim? As you know,

schedules do not show actual days or times worked. They are just schedules. They also would have no bearing on your wage claims or meal period claims.

- o Request Nos. 9, 10, and 11 ask Defendant to produce policies, procedures, and practices applicable to putative class members related to on-call time, turnover time, time spent donning and doffing personal protective equipment during the relevant time period.

We have already produced all CBAs that contain policies on your (1) shift relief; (2) unpaid standby time; and (3) rounding. We will search for any policies discussing donning and doffing.

- o Request No. 12 asks Defendant to produce all personnel, human resources, and employee handbooks in effect during the relevant time period.

We have already produced the CBAS, as well as related guidelines and policies.  We are available to meet and confer if you have any specific perceived omission you would like to discuss.

- o Request No. 18 asks Defendant to produce all documents supporting its contention that it did not willfully fail to comply with Labor Code sections 201 and 202.

Your 202 claim has been dismissed. Your 201 claim is entirely derivative of all of your pleaded underlying claims, correct?  If that is correct, then the responsive documents are the broader collection of documents produced in response to the requests relating to your underlying claims.  Again, if there is any specific perceived omission you would like to discuss, we are available, but your email identifies none.

- **Special Interrogatories**:
  - o Special Interrogatory No. 1 asks the Defendant to state the name, address, telephone number and e-mail address of its non-exempt hourly employees during the liability and as to each non-exempt employee state: (a) The dates of employment, (b) The employment status and (c) the position(s).

This appears to be a further fishing expedition that the Magistrate did not endorse. We have already provided all Carson lab contact information.

- o Special Interrogatory No. 2 and its subparts ask Defendant to described how it calculated putative class members' hours worked during the relevant period and to explain any rounding of hours worked, any shaving it used, automatic deduction of time, how turnover time and time spent donning and doffing was factored in, if at all, and how on-call time was calculated.

We will answer this interrogatory regarding rounding

- o Special Interrogatory No. 3 and its subparts ask for the identity of putative class members (excluding those who covered an on-duty meal period agreement), during the relevant time period, dates of employment; employment status; whether they missed meal breaks or received late meal breaks and when; whether they were paid meal periods premiums and, if so, in what amount and how was the meal period premium was calculated; number of shifts that would entitle putative class members to second meal periods; number of waived second meal periods, missed or late second meal periods, amount of meal period premium wages paid for second meal periods and how that amount was calculated.

The meal break claim is limited to Carson operators as they are the only who received an extra 30 minutes of pay if they stayed on the premises for meal periods. And Plaintiff testified he received all his meal breaks. For those reasons, we fail to understand why information regarding whether employees missed meal breaks, received late meal breaks, and whether or when they received premiums has any bearing on the claim. Further all second meal breaks at Carson were waived.

- Special Interrogatory No. 4 is limited to Lab Technicians during the liability period and asks for information regarding rest breaks, rest break premium wages paid, how they were calculated, and the number of shifts entitling Lab Technicians to rest breaks.

We will not answer this interrogatory as it exceeds the number permitted under the FRCP. Further, we already provided data responsive to this interrogatory for the Carson Laboratory.

- Special Interrogatory No. 5 asks the number of putative class members who were required to do shift turnovers, number of shifts subject to turnovers, how turnover time was calculated, and how turnover time was compensated.

We will not answer this interrogatory as it exceeds the number permitted under the FRCP.

- Special Interrogatory No. 6 asked the number of putative class members who worked on-call, how their compensation was determined, the total number of hours worked on-call and the number of hours putative class members were compensated on-call during the relevant time period.

We will not answer this interrogatory as it exceeds the number permitted under the FRCP.

Relatedly, we need to schedule the deposition of Defendant's person most knowledgeable regarding its wage and hour policies during the class period for non-exempt employees at all of Defendants' refineries. The categories are as follows:

- Policies, procedures and practices regarding clocking-in and out for all hourly non-exempt employees, including at the beginning and end of the shift as well as at the beginning and end of meal breaks during the class period (August 17, 2014 to present).
- Policies, procedures and practices regarding calculation of all hourly non-exempt employees' worked hours during the class period.
- Policies, procedures and practices regarding calculation of all hourly non-exempt employees' compensation.
- Policies, procedures and practices regarding meal breaks for all hourly non-exempt employees during the class period.
- Policies, procedures and practices regarding payment of premium wages to all hourly non-exempt employees for legally non-compliant meal breaks during the class period
- Policies, procedures and practices regarding rest breaks for all hourly non-exempt employees during the class period
- Policies, procedures and practices regarding payment of premium wages to all hourly non-exempt employees for legally non-compliant rest breaks during the class period.
- Policies, procedures and practices regarding payment of final wages to terminated and/or resigned hourly non-exempt employees during the class period.
- Policies, procedures and practices regarding donning and doffing personal protective equipment for all hourly non-exempt employees during the class period.
- Policies, procedures and practices regarding turnover time during the class period.
- Policies, procedures and practices regarding on-call time during the class period.
- Policies, procedures and practices regarding rounding of worked hours for all hourly non-exempt employees during the class period.
- Policies, procedures and practices regarding off-premises meal periods taken by all hourly non-exempt employees during the class period.

- Policies, procedures and practices regarding calculation of meal period premiums during pay periods additional remuneration was earned by all hourly non-exempt employees during the class period.
- Policies, procedures and practices regarding rest breaks for lab technicians during the class period. Policies, procedures and practices regarding rest breaks, including 3rd rest breaks for all hourly non-exempt employees who worked more than ten (10) hours in a shift during the class period

We are open to producing a witness on these topics for Carson Lab. But your class representative's testimony has already conclusively established that his claims and theories are not statewide. Unless you have some other information to offer us as to how there is any violation that plaintiff knows of beyond his unit at Carson - this is the exact type of fishing expedition federal courts have repeatedly rejected.

Please let us know when we can expect Defendant's responses to the aforementioned discovery. Relatedly, please propose some dates in mid-April when we can schedule the PMK deposition. Finally, if you would like to set up a conference call to discuss a representative sampling of class data or any other issues mentioned herein, please propose a time this week or early next week.

Best,

Anwar Burton, Esq.
**LAVI & EBRAHIMIAN, LLP**
8889 West Olympic Blvd., Suite 200
Beverly Hills, CA 90211
Tel: (310) 432-0000
Fax: (310) 432-0001
E-mail to: aburton@lelawfirm.com

The information contained herein (and any attachments) is confidential and privileged attorney-client information or work product intended only for the individual or entity to whom it is addressed. Any unauthorized use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error please notify me immediately. Thank you for your cooperation. PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL.

**Mike W Kopp** | Senior Counsel | Seyfarth Shaw LLP
400 Capitol Mall | Suite 2350 | Sacramento, California 95814-4428
Direct: +1-916-498-7039
mkopp@seyfarth.com | www.seyfarth.com

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.