September 30, 2020

The Honorable Judge Robert M. Illman
United States District Court Judge
Northern District of California
Eureka-McKinleyville Courthouse,
3140 Boeing Ave
McKinleyville, CA 95519

Re:   *McGhee v. Tesoro Refining & Marketing Company, LLC* (Case No. 18-cv-05999-JSW)

Hon. Judge Illman:

Plaintiff Derek Mcghee's ("Plaintiff") and Defendants Tesoro Refining & Marketing Company LLC; Andeavor; and Andeavor Logistics LP (collectively, "Defendants") (collectively the "Parties") hereby submit the following discovery letter brief.

## I.   PLAINTIFF'S STATEMENT

### A. Statement of Unresolved Discovery Issue

Through this joint letter brief, Plaintiff respectfully requests that this Court issue an Order compelling Defendants to supplement its prior responses to Plaintiff's Special Interrogatories Nos. 1 and 5 and produce putative class member contact information and payroll data on a class-wide basis. (*See* **Exhibit Nos. 1 and 2**.)

Plaintiff further requests that this Court issue an Order compelling Defendants supplement its responses to Plaintiff's Special Interrogatory No. 2 and Request for Production Nos. 6, 7, 8, 9, 10, 11, and 12 and produce information related to its relevant policies and procedures including a description of any rounding policies and how it calculated putative class members hours worked including turnover time, time spent on call, and time spent donning and doffing personal protective equipment. (*Id.*)

Finally, Plaintiff requests that this Court issue an Order compelling Defendants to provide Plaintiff with 30(b)(6) deponent availability regarding its policies and procedures on a class wide basis.

### B. Plaintiff's Argument and Authorities

#### i. Legal Standard

Precertification discovery lies entirely within the court's discretion. (See Fed.R.Civ.P. 23; see, e.g., *Artis v. Deere & Co.,* 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 942 (9th Cir. 2009)). The Ninth Circuit states that the "advisable practice" for district courts on precertification discovery, "is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. Moreover, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant."

(*Doninger v. Pac. Northwest Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977); see also *Artis*, 276 F.R.D. at 351.) As such, discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether a class or set of subclasses exist. (*Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975); *Vinole*, 571 F.3d at 942 ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted," citing *Kamm*, *Doninger* and *Mantolete*)).

### i. Defendant's FRCP 23 Argument Is Without Merit

Defendants have stymied Plaintiff's access to the requested discovery on the basis that he has not satisfied the requirements under Rule 23. However, courts often rely on the plaintiff's reasonable allegations for concluding that the plaintiff has made a prima facie showing that class action requirements of Rule 23 are met. (*Heredia v. Eddie Bauer LLC,* No. 16-cv-06236-BLF (SVK), 2017 U.S. Dist. LEXIS 54709, at *4-5; *Barreras v. Michaels Stores, Inc.,* No. C 12-4474 (PJH), 2015 U.S. Dist. LEXIS 54166, at *9-10 (N.D. Cal. Apr. 24, 2015)). Here, Plaintiff alleges in his operative complaint that: (1) the class of employees he seeks to represent during the liability period is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact concerning Defendants' alleged policies and practices for payment of wages, provision of meal and rest breaks, and provision of payroll records that are common to the class; (3) the claims or defenses of Plaintiff are typical of the claims or defenses of the class; and (4) Plaintiff will fairly and adequately protect the interests of the class. ECF 80 at ¶ 37. These allegations establish a prima facie showing that the class action requirements of Rule 23 are met. Moreover, even if Plaintiff had not satisfied the requirements of Rule 23 at this stage, the discovery he seeks may substantiate his class certification allegations. Indeed, "[T]he necessary antecedent to the presentation of evidence" concerning whether the requirements for bringing a class action are satisfied "is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant."(*Doninger* at 1313).

### ii. Plaintiff's Discovery Requests Seeking Payroll and Timekeeping Documents and Data Are Essential for Class Certification Purposes

Courts have long held that putative class member timekeeping and payroll records are discoverable for purposes of class certification. (*Chavez v. Petrissans* (E.D.Cal. Sep. 5, 2008, No. 08 cv 00122 LJO GSA) 2008 U.S.Dist.LEXIS 111596, at *10.) ("The requested information is relevant and discoverable for purposes of class certification since the documents provide information regarding the numbers of hours worked and the amount employees were paid," quoting *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562-63 (C.D.Cal. 2007) (holding that "Documents consisting of time and wage records are relevant for purposes of class certification since they assist the court in showing numerosity and commonality")).

Although Plaintiff has already received payroll records relating to employees who worked as laboratory technicians at Defendants' Carson laboratory, this group of employees comprises only a small subset of a larger putative class that Plaintiff seeks to certify. Nevertheless, the results from Plaintiff's analysis reveal a systemic trend of underpayment amongst these employees. In conducting its analysis, Plaintiff analyzed time records and pay data from 10,006 shifts. During this time, Plaintiff determined there was a net underpayment of 273.8 hours due to rounding.

Relatedly, Plaintiff's analysis concluded that Defendants' Carson laboratory employees were underpaid by an average of 1.6 minutes per shift during the same timeframe. Additionally, Plaintiff's analysis showed 7,481 instances where recorded first meal breaks were taken after the end of the fifth hour. Based on the foregoing, Plaintiff now seeks access to a greater sampling of payroll data on a class wide basis e.g., 20% sampling of randomized months during the liability period where Plaintiff is provided timecards and payroll data for all non-exempt employees that fall within Plaintiff's class definitions.

Moreover, the expanded timekeeping and payroll information sought by Plaintiff is not only relevant to Defendants' liability but also critical to establish numerosity, commonality and typicality for purposes of class certification beyond the Carson laboratory unit. See, e.g., *Bibo v. FedEx*, 2009 WL 1068880 (N.D. Cal. 2009) (class certified where time and payroll data served as common proof for purposes of Rule 23 elements and for calculating damages). For example, Plaintiff will use the expanded payroll information to meet the requirements of Rule 23 in the following ways: (1) Numerosity FRCP 23(a)(1) – uniform rounding practices and instances of rest and meal period violations in the timekeeping and payroll records would show whether "the class is so numerous that joinder of all members is impracticable;" (2) Commonality FRCP 23(a)(2) - the timekeeping and payroll records would demonstrate common factual questions, such as whether Defendants kept track of start and stop times, recorded meal and rest breaks, paid premium wages for missed meal and rest periods; or provided timely and complete rest and meal breaks. This will also highlight common issues of law, such as whether it is unlawful to not provide at least three rest breaks for shifts of more than ten hours.; (3) Typicality FRCP 23(a)(3) time and payroll information will show whether Plaintiff's claims (e.g., unpaid time, unpaid rest, meal premiums) are typical of those of the class; and (4) Predominance of Common Issues FRCP 23(b)(3) – the time and payroll information will enable Plaintiff to demonstrate whether, for example, the complete failure to pay premium wages for missed rest and meal periods predominates over any individualized inquiries, and whether Plaintiff can provide common proof at trial to resolve the case on a class-wide basis.

> iii. *Courts Have Uniformly Held That Named Plaintiff in Class Actions Are Entitled to Putative Class Member Contact Information*

Disclosure of putative class members' contact information "is a common practice in the class action context." *Rodriguez v. Nike Retail Servs., Inc.,* No. 5:14-cv-01508-BLF (HRL), 2015 U.S. Dist. LEXIS 56377, at *4 (N.D. Cal. April 29, 2015) (internal quotation marks and citation omitted), motion for relief from non-dispositive order denied at ECF 43; see also *Bell v. Delta Air Lines, Inc.,* No. C13-01199YGR (LB), 2014 WL 985829, at *3 (N.D. Cal. Mar. 7, 2014) (collecting cases).

Defendants will argue that because Plaintiff only worked in the Carson facility, he has no knowledge of Defendants operations beyond his own worksite and therefore has no basis to conduct discovery pertaining to Defendants' other locations. This argument lacks merit, however, and has been conclusively rejected in this district. Indeed, various magistrate judges in this district have compelled disclosure of putative class contact information under similar circumstances: Magistrate Judge Susan Van Keulen in *Heredia v. Eddie Bauer LLC,* 2017 U.S. Dist. LEXIS 54709 at *8-9 (N.D. Cal. Apr. 10, 2017)Magistrate Judge Howard R. Lloyd in *Rodriguez v. Nike Retail Services, Inc.,* 5:14-cv-01508-BLF (N.D. Cal. April 29, 2015), Magistrate Judge Laurel Beeler in

*Barreras v. Michaels Stores, Inc.,* 2015 U.S. Dist. LEXIS 54166 at *15-16 (N.D. Cal. Apr. 24, 2015), and Magistrate Nathanael Cousins in *Chavez v. Converse, Inc.,* Case No. 5:15-cv-03746-NC (N.D. Cal. Feb. 1, 2016)

Moreover, Plaintiff should be granted access to putative class members from Defendants' other locations because as described above, Plaintiff has already established a pattern of violations dating back to 2014 occurring at the Carson facility where he worked. Considering Defendants utilized a centralized timekeeping system at all of its California locations, it is likely, if not certain that employees at Defendants' other locations were similarly underpaid. Likewise, it naturally follows that Plaintiff should be allowed to investigate his claims beyond the Carson facility by interviewing employees at Defendants' other locations. Indeed, these employees are percipient fact witnesses who can provide relevant evidence that during the liability period, Defendants underpaid their employees and failed to provide legally complaint meal and rest periods.

### C. Conclusion

In accordance with the authority cited above, this Court should Order Defendants to supplement its prior responses and document production to Plaintiff's aforementioned discovery requests which undoubtedly fall within the scope of precertification discovery that has routinely been allowed by courts in this district. Nevertheless, with respect to putative class member contact information, Plaintiff agrees to utilize the notification process enunciated in *Belaire-West Landscape Inc. v. Sup. Ct.,* 149 Cal. App. 4th 554, 557-58 (2007). Regarding an expanded sampling of putative class member payroll data on a class-wide basis, Plaintiff proposes a 20% sampling of randomized months (selected by Plaintiff) during the liability period where Plaintiff is provided with timecards and payroll data for all non-exempt employees that fall within Plaintiff's class definitions.

### I.   DEFENDANT'S POSITION

Plaintiff's argument fails to establish an entitlement to his disproportionate and burdensome statewide discovery for facilities and positions at which he never worked, where he admits he has *no knowledge* of any purported violations beyond the Carson Lab.

**Plaintiff's Admissions Confirm the Absence of Statewide Violations.** In this renewed motion to compel, Plaintiff drops most of the argument presented in his earlier request for statewide discovery (as to purportedly noncompliant rest periods,[1] uncompensated donning and doffing,[2] standby,[3] and shift turnover time).[4] Plaintiff's testimony confirms the absence of any

---

[1] The CBAs applicable to Plaintiff provide a lawful rest period policy. Plaintiff admits lab operators had significant downtime for breaks (3-6 hours), to step out to make personal calls, plan vacations, or engage in personal activities. Tr. at 113, 120-27, 132. Plaintiff admitted he could take a later break if he was ever interrupted. Tr. at 173:16-174:6.

[2] Plaintiff testified he *clocked in before putting on his gear* (Tr. at 213:10-14), that employees could take gear home (rather than "doffing" it at work), and no supervisor instructed that putting or taking off equipment must occur off the clock. Tr. 204:15-17; 240:11-16.

[3] Plaintiff's testimony contradicts his allegations that standby time is controlled or prevented personal activities: "Q: [S]o if you wanted to, you could give them your cell phone or pager and go out and play Frisbee, is that right? A: Correct. Q: Or row a boat or whatever personal activity you want to engage in - A: Correct." Tr. at 230:6-17.

[4] Plaintiff admitted he conducted turnover meetings in the Lab *after he punched in*. Tr. 210:15-211:1; 213:10-14; 155:6-10 ("So I take it the answer to my question, did anyone tell you need to do your shift turnover off the clock, the answer is no. No one told you that. Is that correct? A: I believe that is correct.")

unlawful conduct even as to him—much less as to employees at all locations statewide.

**There is No Right to Statewide Discovery Where Policies Are Not Statewide:**
Plaintiff suggests that by affixing "class action" to the Complaint, he is entitled to statewide discovery - irrespective of whether other refineries operate under *different rules* than the ones he worked under and challenges. That is not the law, and the authorities Plaintiff cites for statewide discovery all involve national retailers who had uniform *California state-wide policies*.[5] These authorities do not support discovery for separate refinery locations subject to *different* practices, policies, and governing collective bargaining agreements than those applicable to Plaintiff. For example, Plaintiff alleges he needs to essentially audit other refineries for potential meal period and rounding issues, but he ignores that these facilities have distinct meal and timekeeping policies from those he challenges. As discussed below, in circumstances such as these, courts have consistently limited putative class discovery by location and position. Plaintiff also neglects to inform the Court that he has *declined* to conduct offered deposition discovery as to these facilities, where he would learn that the policies *are not common.*

**Plaintiff is Abusively Seeking to Compel Discovery that Defendants *Offered*:** That Plaintiff is now burdening the Court and Defendants with this renewed motion is particularly abusive. Specifically, Plaintiff seeks to have this Court compel 30(b)(6) deposition testimony ***that Defendants already offered to provide.*** Defendant offered to provide the 30(b)(6) witness, Plaintiff declined to move forward, yet seeks to have this Court compel this deposition.

Plaintiff has had access to putative class contact information since February 2020, when Defendant produced information for all current and former hourly employees at the Carson Lab where he worked. Plaintiff also has had access to Carson Lab time/wage records since February 2020, which Defendant supplemented on May 27, 2020, and July 20, 2020 and July 24, 2020. (Indeed, Plaintiff argues he has analyzed over 10,000 shifts). Although Plaintiff has not presented any basis for discovery as to other corporate employers, other refineries, or units at which he never worked, Tesoro produced the separate and *distinct* CBAs and policies for the California refineries where Plaintiff *never worked*, and for corporate entities for which Plaintiff never worked (e.g., Tesoro Logistics), and offered a 30(b)(6) deposition which Plaintiff declined. As discussed below, Plaintiff's motion confirms the *absence* of a basis for statewide discovery, but rather that his alleged claims implicate CBA provisions and practices unique to Carson.

### A.   Plaintiff has Only Worked for Tesoro at the Carson Lab, Which is Subject to Different Policies, Practices and Collective Bargaining Agreements.

Plaintiff worked only for Tesoro Refining & Marketing Company at the Carson Lab - and not for any other named defendant (Tesoro Logistics or Andeavor Logistics). Tr. at 38:12-19. That Plaintiff now seeks statewide discovery for these additional defendants/locations is contrary to his prior argument. Plaintiff previously conceded in his opposition to the motion to relate (Dkt. 51 at 3:7) that matters are "*unrelated*" where they concern an "entity ***for whom Plaintiff McGhee never worked***" (arguing that the *Wood v. Marathon* action was unrelated because it was brought against a corporate defendant over than the Martinez refinery for which he never worked). Plaintiff worked at only one refinery (Carson), and has never been subject to, or even

---

[5] *See, e.g., Heredia v. Eddie Bauer*, 2017 WL 1316906 (N.D. Cal. Apr. 10, 2017) (court noted that the national retailer, Eddie Bauer, had referred to its "exit inspection *policy*" that "does not depend on where the employees were located . . . "); *Barreras v. Michaels Stores, Inc.*, 2015 WL 1886337 (N.D. Cal. Apr. 24, 2015) (National retailer Michaels had template letters for leave requests).

seen the policies and CBAs that have applied at other California Tesoro refineries at Martinez, Wilmington, and Logistics terminals. Tr. at 41:3-11. Plaintiff has only worked for one Unit - the Carson Lab, and in only one position - Lab Tech IV. Plaintiff admitted the Lab Unit is *physically separate* from the other Carson Units. Tr. at 48:11-49:13.

Statewide discovery as to the separate refineries is not warranted where they are *not* subject to the same policies or practices, Plaintiff never worked under those policies, suffered no injury because of those separate policies, and has no knowledge of them. Within California, Tesoro operates the Martinez Refinery, the Carson Refinery, and Wilmington Refinery, each of which are subject to distinct, and separate policies and CBAs. Tesoro Logistics also operated terminal facilities in California, subject to yet further different CBAs. Plaintiff is challenging distinct *Carson* **established policies.** These other Refineries also had different supervisors and refinery management with no responsibilities for Carson, its Lab, or Plaintiff.

For example, the Carson facility where Plaintiff worked, was previously owned by BP, and subject to a CBA negotiated by the United Steelworkers and BP, which then applied to Tesoro as a successor. (Dkt. 37-3, Declaration of Karen Kawano, ¶ 11-12). These reflect different policies and procedures than those that apply to Tesoro's Martinez Refinery and separate policies at Wilmington, which did not have that prior history. (Id., ¶ 7-20, Exs. A-T.) As discussed below, the policy and legal theories in the Complaint (the unique Carson meal period policy) is distinct from those at Wilmington, Martinez, and Logistics, and Plaintiff's own theory does not support expansion to refineries that did not operate under the Carson policies.

### B. Plaintiff Has Failed To Justify Statewide Discovery.

There is no inherent right to statewide discovery simply because Plaintiff has purported to bring a class action. Prior to certification, discovery lies within the discretion of the court, and it is specifically *plaintiff's burden* to justify the need for class discovery. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Plaintiffs, to justify class-wide discovery, must "advance[] a prima facie showing" that "discovery is likely to produce substantiation of the class allegations.").

Plaintiff fails to cite a single case ordering statewide discovery where other locations had different policies. Courts have repeatedly rejected unsupported requests for precertification discovery of putative class members' identities/contact information and time/pay records where the plaintiff failed to establish a basis for such discovery under *Mantolete. See, e.g., Vazquez v. P.F. Chang's China Bistro, Inc.*, 2009 WL 10698477, at *1 (C.D. Cal. Oct. 9, 2009); *Maes v. JP Morgan Chase*, 2013 WL 811839, at *2 (S.D. Cal. Mar. 5, 2013); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) (numerous "district courts have . . . concluded that plaintiffs [are] not entitled to discovery from branch locations where they never worked absent some evidence to indicate *company- wide violations*"); *Dittmar v. Costco*, 2016 WL 7188231 (S.D. Cal. Dec. 12, 2016) (denying statewide discovery, limiting to location); *Holloway v. 3M Co.*, 2019 WL 7172600, at *6 (C.D. Cal. Oct. 31, 2019) (statewide class discovery denied where defendant's evidence showed "substantial differences between the operations at each facility" and plaintiff's evidence was only from employee at different facility).

Here, not only is the management different, the *policies* are different, and Plaintiff makes no argument to the contrary, even though it is his burden to show a basis for statewide discovery.

Plaintiff's purported need for *statewide* discovery rests on the claim that he needs the information to explore whether there are rounding and meal period violations at other locations. There is no "centralized" timekeeping protocol, and the refineries each separately program timekeeping according to their unique CBA requirements. This argument is defective.

*First*, Plaintiff's meal period theory is exclusively based on a ***Carson CBA that is not statewide***. Plaintiff alleges that when employees opted to take off premises meal periods they were "required" to "work an extra 30 minutes at the end of the workday, thereby effectively discouraging" breaks. Dkt. 80, ¶ 25. But that local policy dates to BP ownership of the Carson refinery, and CBAs between BP and USW that only carried forward to subsequent *Carson* refinery CBAs. *See* Dkt. 37-3, p. 207 of 757, Kawano Decl., Ex. E, p. 62. This policy is not plant wide even at Carson; the CBA specifies this applies to "employees assigned to a twelve-hour alternate shift." Id. This unique Carson meal period provision is not found at Martinez (Id. Exs. A-D), nor in the Logistics and Teamsters CBA (*Id.* Ex. K), nor at Wilmington (Exs. F, I.) Plaintiff's own claim theory forecloses the relevance or need for conducting this fishing expedition into refineries which do not have his challenged meal period policy.

*Second*, Plaintiff testified this meal policy was the *only* theory he was pursuing:

> Q: Okay. So that's the meal period claim as I understand; is that correct? A: Yes. Q: So you're ***not alleging you weren't getting meal periods.*** It's that you were ***discouraged from going offsite***; correct? A: By them adding an extra 30 minutes on our workday. Q: Okay. So that's Correct? A: Correct. Tr. at 244.

Accordingly, the statewide time records Plaintiffs seek would have no bearing on his legal theory (*i.e.*, It is not relevant that Plaintiff claims that 6% of meal breaks at the Carson Lab took place after the fifth hour because he testified his claim is not based on "late" meal periods).

*Third*, Plaintiff's assertion (without evidence) that he has purportedly discovered instances of late meal periods "after the end of the fifth hour" (1) contradicts his deposition testimony he is not alleging this type of violation, and (2) shows that he does not understand the Carson CBA and applicable meal period law. Wage Order 1 (which applies here) contains an exception for CBAs: "In the case of employees covered by a valid collective bargaining agreement, the parties to the collective bargaining agreement may agree to a meal period that commences after no more than *six (6)* hours of work." The Carson CBA meal period provision lawfully reflects this: "An Off-Duty meal period shall be provided no later than after an employee's first (6) consecutive hours of work." In short, this is (1) a claim Plaintiff testified he is not asserting, (2) reflects a legal Carson meal period, and (3) is not relevant to his claim that the Carson "extra 30-minute requirement" encouraged employees to stay on premises.

*Fourth*, Plaintiff's passing assertion he needs time records to assess "unpaid rest breaks" confirms the bad faith nature of the request for statewide discovery. Rest periods (as provided by California law) are on-the-clock and not tracked by time records.

*Fifth,* Plaintiff's assertion that he has discovered underpayments by virtue of rounding does not support statewide discovery; it is unsupported and inaccurate, as Carson applies a time adjustment practice via the CBA that adjusts overtime one-way - in favor of the employee. *See, e.g.,* Kawano Decl., Ex. E, p. 58 ("for the purpose of computing overtime under this Article, any employee working any part of the first thirty (30) minutes of an overtime hour shall be considered as having worked one-half (1/2) hour and an employee working more than thirty (30)

minutes of any overtime hour shall be considered as having worked one (1) hour.") These adjustments in conjunction with a facially-neutral grace period policy result in employees gaining time. Nor has Plaintiff presented any evidence that Carson timekeeping practices apply to other facilities. This is particularly egregious where Plaintiff *declined* an offered 30(b)(6) deposition, where Plaintiff would have been able to inquire as to other facilities' timekeeping practices, and to learn that the Carson practices are not the same as those at other refineries.

In short, Plaintiff's showing is woefully insufficient. *Franco v. Bank of Am.*, 2009 WL 8729265, at *1-2 (S.D. Cal. Dec. 1, 2009) (plaintiff had not justified discovery beyond the facility where she worked where plaintiff's only *evidence* regarding the practices at other facilities was "common sense'"); *Martinet v. Spherion Atl. Enters., LLC*, 2008 WL 2557490, at *1-2 (S.D. Cal. June 23, 2008) (same); *Nguyen v. Baxter Healthcare Corp.,* 275 F.R.D. 503, 508 (C.D. Cal. 2011) (no basis to require discovery beyond the facility where Plaintiff worked where evidence had not shown any indication *of statewide practice*). In such instances, courts consistently limit contact information to individuals holding the same *position at the same location* as the named Plaintiff. *Bell v. Delta Air Lines, Inc*., 2014 U.S. Dist. LEXIS 30871, at *11-12 (N.D. Cal. Mar. 7, 2014); *Ramirez v. Geo Group, Inc.*, 2019 WL 950328 at *3 (S.D. Cal. Feb. 26, 2019) (limiting discovery to the two positions plaintiff had held as proportional).

The burden to gather this information is significant. Plaintiff seeks years of time and wage records for over a thousand employees at all of Tesoro's refineries. These are located in separate systems, and even to produce the time and pay records for the Carson Lab from different archived systems involved over 100 hours of attorney and staff time. To expand this statewide, and even assuming a more modest estimate of time of .5 hour per set of reviewed employee time and wage records, this would require over 500 attorney hours. Plaintiff offers no basis for this overreach and, as discussed, such records would not shed light on his claims which are based on Carson practice. This fishing expedition is in violation of Rule 26's proportionality and relevancy requirements, and particularly egregious where Plaintiff has *declined* deposition discovery that would confirm the separate policies at facilities at which Plaintiff never worked.

In sum, Plaintiff lacks evidence of California-wide unlawful policies or practices to show that statewide discovery is proportional. *See Ramirez v. Geo Group, Inc.*, 2019 WL 950328 at *3 (S.D. Cal. Feb. 26, 2019) (denying statewide discovery where plaintiff's evidence and testimony showed he has no evidence of violations beyond the location or position he worked.)

C. **Plaintiff Seeks to Compel A Deposition He Declined.**

Parties are not permitted to seek court intervention to compel discovery that another party offered. Plaintiff, without ever serving a deposition notice, requested a 30(b)(6) deposition in July 2020. When Defendant promptly responded and offered to produce a witness for an August 24, 2020 deposition on the topics Plaintiff identified for all refineries, Plaintiff declined to proceed. To now ask the Court to compel a deposition (1) which Plaintiff has never noticed, (2) which Defendant offered when requested, and (3) which *Plaintiff* then declined to take, is a particularly abusive use of discovery motion practice. Moreover, had Plaintiff taken that deposition, it would have obviated the need for the instant motion, as it would have further confirmed (beyond the CBAs and policies already provided) that the policies Plaintiff worked under were unique to Carson, and that the other refinery locations are subject to unique CBAs, practices, and supervision. For all of these reasons, Plaintiff's motion should be denied.